# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

RADIATOR EXPRESS WAREHOUSE, INC.,

        Plaintiff,

v.                                     Case No. 09-CV-285

JEFFREY SHIE, JOSEPH DEPONIO,
RADPRO-MILWAUKEE, LLC,
RADPRO-MINNEAPOLIS, LLC,
RADPRO-QUAD CITIES, LLC,
HEATEX RADIATOR INC, and ANDREW WIDEN,

        Defendants.

_____

# ORDER

On July 31, 2009, the plaintiff, Radiator Express Warehouse, Inc. ("RADX"), filed an amended complaint against the defendants, alleging several violations of Wisconsin state tort law. (Docket #17). In September of 2009, the defendants collectively filed, pursuant to Fed. R. Civ. P. 12(b)(6), a joint motion to dismiss RADX's amended complaint in its entirety and with prejudice, contending that the complaint failed to state a claim upon which relief can be granted. (Docket #28). All of the parties have fully briefed the court on the relevant issues related to the motion to dismiss and, as a result, the court is prepared to rule on the motion. The court begins by discussing the facts as provided in the plaintiff's amended complaint.

## FACTUAL BACKGROUND

RADX, a California based company, is in the business of "offering radiators and other auto parts to its body shop and repair shop customers . . . through a

system of franchise warehouse outlets." (Am. Compl. ¶ 1). In 2008, RADX sought to purchase the assets of one of its competitors in the midwest, Automotive Cooling Products, Inc. ("ACP"), a company based in Minnesota. *Id.* at ¶ 11. In particular, RADX was seeking to acquire ACP's list of customers, which included the names, contact information, and data related to each customer's purchases. *Id.* Moreover, as part of the transaction, ACP would eventually agree to "use its best efforts to transfer its customers to RADX" and "exit the business of distributing radiators and other automotive parts." *Id.* RADX also desired that ACP's current employees continue their employment with the plaintiff, *Id.* at ¶ 13, although nowhere in the complaint does it indicate that there was any formal agreement that ACP's employees would be hired by RADX.

At the time RADX began its negotiations with ACP, defendants Jeffrey Shie ("Shie") and Andrew Widen ("Widen") were employed by the Minnesota company. *Id.* at ¶ 13. RADX, in its efforts to effectuate its agreement with ACP, worked with and had several meetings in both Minnesota and California with Shie and Widen. *Id.* at ¶ 14. In their discussions with the two ACP employees, RADX officials disclosed details on "who in each company would be responsible for [a given] task in the transition from ACP to RADX." *Id.* at ¶ 15. Of particular note, in a meeting on September 10, 2008, Shie was provided with "copies of RADX's Operations Manual and Training Manual," which the plaintiff asserts contains "all the information necessary to successfully operate a RADX franchise warehouse." *Id.* at ¶ 16. In addition, Shie and Widen also had access to ACP's list of customers and several

documents that detailed RADX's business strategies. *Id.* at ¶ 17. RADX also provided Shie with a laptop computer. *Id.* at ¶ 18. RADX alleges that Shie and Widen "understood and agreed that any and all data and documents shared at these meetings was strictly confidential."[1] *Id.* at ¶ 15. However, there was no written agreement that restricted what Shie and Widen could do with the information the plaintiff provided to them.

The plaintiff alleges that Shie made several statements both prior to and following the closing of RADX's transaction with ACP that financially hurt the plaintiff. *Id.* at ¶ 21. For example, Shie told fellow employees that RADX intended to terminate all ACP employees once the plaintiff completed its acquisition. *Id.* RADX also alleges that Shie told ACP's sales representatives to make "disparaging remarks about RADX to ACP's customers" and to "disseminate contact information concerning Radpro," a rival company. *Id.* Shie also allegedly instructed ACP's customers to wait until RADX's acquisition of ACP was complete to "return ACP warranty parts for cash rebates" in order to financially harm RADX. *Id.* Finally, RADX accuses Shie of coordinating an effort to have ACP employees "secretly follow" the plaintiff's delivery drivers to further determine the identity of RADX's customers. *Id.*

Moreover, RADX contends in its complaint that Shie and Widen disclosed to defendant Joseph DePonio ("DePonio"), an executive at the Michigan company

---

[1] RADX claims that during the September 10, 2008 meeting that Shie "agreed to maintain . . . [the] secrecy" of the information provided to him by the plaintiff. (Am. Compl. ¶ 16).

Heatex Radiator, Inc. ("Heatex"), the contents of RADX's operations manual and other information about RADX's business strategies. *Id.* at ¶ 22. Shie also allegedly disclosed ACP's list of customers to DePonio. *Id.* The information disclosed to DePonio allowed Heatex to form "outlets" that competed with RADX. *Id.* at ¶ 23. In late June of 2008, Heatex filed limited liability company registration papers for "Radpro" in Wisconsin. *Id.* Heatex filed similar documents in "other states where ACP's warehouses were located," under the "Radpro" name. *Id.* Moreover, Shie worked with DePonio to set up the new Radpro warehouses. *Id.* at ¶ 24. Shie signed leases for Radpro's warehouses, contacted vendors to stock the warehouses, and allegedly used the information he obtained from RADX to "strategically equip and locate" the warehouses to best compete with the plaintiff. *Id.* Shie also solicited ACP employees to work for Radpro. *Id.* at ¶ 25.

RADX eventually became aware of Shie and Widen's actions and demanded the "immediate return of all RADX property, including any and all RADX documents . . . and the RADX computer that Shie had been provided." *Id.* at ¶ 26. Shie returned the computer, but RADX states that the company has received no other documents, such as its manual, from Shie. *Id.* On March 13, 2009, RADX filed a civil complaint against Shie in this court. (Docket #1). More than four months later, on July 31, 2009, RADX amended its complaint to add Widen, DePonio, Heatex, and Radpro's Milwaukee, Minneapolis, and Quad Cities' affiliates as defendants. (Docket #17). The amended complaint alleges six causes of action: (1) violations of the Uniform Trade Secrets Act; (2) tortious interference with prospective contract;

(3) intentional misrepresentation;[2] (4) civil theft; (5) conversion; and (6) civil conspiracy. Against this backdrop, the court now proceeds to address the motion to dismiss.

## DISCUSSION

Fed. R. Civ. P. 12(b)(6) permits a defendant to make a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a 12(b)(6) motion to dismiss, the plaintiff's complaint must only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] *Iqbal,* 129 S. Ct. at 1949. When the plaintiff's allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint does not satisfy the minimal pleading burden of Rule 8 of the Federal Rules of Civil Procedure. *Id.* at 1950. Moreover, Fed. R. Civ. P. 9(b)

---

[2] The intentional misrepresentation claim is only alleged against defendant Shie.

[3] The court is also guided by the Seventh Circuit recent synthesis of the Supreme Court's case law on Fed. R. Civ. P. 12(b)(6):

"So, what do we take away from *Twombly, Erickson*, and *Iqbal?* First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Case 2:09-cv-00285-JPS   Filed 04/22/10   Page 5 of 18   Document 37

requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake" must be stated "with particularity." To meet this requirement, the plaintiff must state in the complaint the "identity of the person making the misrepresentation, the time, place, and context of the misrepresentation, and the method by which the misrepresentation was communicated." *Wade v. Hopper*, 993 F.2d 1246, 1250 (7th Cir. 1993). With these standards in mind, the court proceeds to examine the legal sufficiency of each of the claims alleged in RADX's complaint.[4]

## A. Misappropriation of Trade Secrets Claim

RADX first alleges that the defendants misappropriated the plaintiff's trade secrets, violating Wis. Stat. § 134.90. To set forth a cause of action under the Uniform Trade Secrets Act ("UTSA") as enacted by Wisconsin through the Wisconsin Trade Secrets Act ("WITSA"), the plaintiff must show: (1) that the information at issue is a "trade secret"; and (2) that a "misappropriation" or "threatened misappropriation" of that information occurred. *Minuteman, Inc. v. Alexander*, 146 Wis. 2d. 842, 853-54, 434 N.W.2d 773, 778 (1989).

The defendants first contend that the plaintiff's complaint is insufficient in pleading that the information at issue constitutes a "trade secret." A trade secret is defined by WITSA as information that both: (1) derives "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value

---

[4] Neither party takes issue with Wisconsin law being applied in this case. When the parties do not dispute what law should be applied, the court must apply forum law. *Futuresource L.L.C. v. Reuters Ltd.*, 312 F.3d 281 (7th Cir. 2002).

Case 2:09-cv-00285-JPS    Filed 04/22/10    Page 6 of 18    Document 37

from its disclosure or use"; and (2) is "the subject of efforts to maintain its secrecy that are reasonable under the circumstances." Wis. Stat. § 134.90(1)(c). To determine whether certain information fits into the statutory definition of a trade secret the court must engage in a "fact-intensive" inquiry, considering a variety of factors, such as:

> "(1) the extent to which the information is known outside the business, (2) the extent to which it is known by employees and others involved in the business, (3) the extent of measures taken to guard the secrecy of the information, (4) the value of the information to the business and its competitors, (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Genzyme Corp. v. Bishop*, 463 F. Supp. 2d 946, 949 (W.D. Wis. 2006).

Here, assuming everything the plaintiff states in its complaint to be true, the information in question was highly sensitive and valuable to RADX, as it included internal documents discussing RADX's core business strategies, customer lists that contained a host of information about ACP's customers, including their buying preferences, and RADX's manuals on how to run a RADX warehouse, all information that could only be accessed by a few privileged individuals. (Am. Compl. ¶¶ 12-17). Moreover, the information was disclosed in a meeting to two employees of ACP who agreed to maintain the secrecy of the information acquired.[5] *Id.* at ¶ 16. While facts

---

[5] It is of no matter that there was no formal agreement created to protect the confidentiality of the information disclosed to Shie and Widen with respect to the question of whether the information constitutes a trade secret. *See, e.g., American Can Co. v. Mansukhani*, No. 81-CV-1372, 1982 U.S. Dist. LEXIS 17324, at *17 (E.D. Wis. June 18, 1982) ("Further, that Mansukhani never signed a secrecy agreement with plaintiff does not defeat plaintiff's claims . . . plaintiff's claim of misapplication of trade secrets lies in tort and does not require a contractual relationship.") While a formal secrecy agreement may be evidence that the information in question is a trade secret, it is not dispositive on the issue.

Case 2:09-cv-00285-JPS   Filed 04/22/10   Page 7 of 18   Document 37

may arise during discovery that cast doubts on the plaintiff's allegations, the court finds that based on the allegations made in the complaint it is plausible – and not merely speculative – that the information that was allegedly misappropriated by the defendants was a trade secret. The plaintiff's allegations are far from "threadbare," as they allege the basis for a credible claim that the information provided to the defendants was both highly valuable and conveyed under an assumption of secrecy. Even post-*Iqbal,* the plaintiff in pleading is not required to provide "detailed factual allegations." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). Rather, a plaintiff, through the complaint, must provide notice to the defendants of the claims alleged against them. *Brooks,* 578 F.3d at 581. In this case, the plaintiff has provided proper notice to the defendants as to the information that is alleged to be a trade secret, and the defendants have enough information to frame an answer.[6] *Bondpro Corp. v. Siemens Westinghouse Power Corp.*, 320 F. Supp. 2d 804, 807 (W.D. Wis. 2004) ("If defendant needs more specificity [about the nature of the trade secrets allegedly misappropriated], it can obtain it through discovery.")

Next, the defendants argue that the complaint fails to allege that a "misappropriation" in the context of Wis. Stat. § 134.90 occurred. Under Wisconsin law, a misappropriation includes disclosing a trade secret when it was acquired "under circumstances giving rise to a duty to maintain its secrecy or limit its use."

---

[6] The court notes that the defendants fail to cite, nor can this court find, a single case in which a court has granted a motion to dismiss a complaint alleging a violation of Wis. Stat. § 134.90 because the information at issue did not constitute a "trade secret." Accordingly, the court finds that it would be far more appropriate if this issue was broached at the summary judgment stage, after appropriate discovery has occurred on a rather fact intensive question.

Wis. Stat. § 134.90(2). Moreover, courts have held that the "breach of an implicit promise to hold information for the client's sole benefit . . . violates the Trade Secrets Act." *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346 (7th Cir. 2006) (applying Wisconsin law); *see also Duggan v. Am. Family Mut. Ins. Co.*, No. 07-CV-0212, 2010 U.S. Dist. LEXIS 30691, at *50-51 (E.D. Wis. Mar. 30, 2010) (holding that a duty to maintain the secrecy or limit the use of a trade secret can arise implicitly based on the nature of a relationship between two parties). In addition, a duty to maintain secrecy can arise in the context of a business acquisition, such that one party has the duty to not disclose a trade secret provided to them for a limited purpose in the course of negotiations. *See* Restatement of Torts § 757, comment j (1939) ("For example, A has a trade secret which he wishes to sell with or without his business. B is a prospective purchaser. In the course of negotiations, A discloses the secret to B solely for the purpose of enabling him to appraise its value . . . B is under a duty not to disclose the secret or use it adversely to A"); *see also Abbott Laboratories v. Norse Chemical Corp.*, 33 Wis. 2d 445, 456 (1967) ("We believe that the Restatement of the Law correctly states the general law of trade secrets.")

Here, the plaintiff has alleged that: (1) Shie and Widen were under a duty to maintain the secrecy of the information provided to the former ACP employees; and (2) Shie and Widen breached that duty by disclosing to a third party the plaintiff's alleged trade secrets. Specifically, RADX contends in its complaint that the nature of the negotiations between RADX and ACP obligated Shie and Widen to "work with RADX to ensure a seamless transition of ACP's customer base to RADX's

warehouses" and to serve as a "liaison" between RADX and ACP during RADX's acquisition of ACP's assets. Am. Compl. ¶¶ 13-14. Moreover, the plaintiff asserts that the defendants promised to hold the information for RADX's benefit, as the parties "understood and agreed that any and all data and documents shared at [any] meetings was strictly confidential." *Id.* at ¶ 15. Assuming the plaintiff's allegations are true, a duty to maintain secrecy existed between the parties based on: (1) an implicit agreement between the parties;[7] and (2) the fact that the information was acquired during negotiations to purchase a business.[8] Moreover, the complaint contends that the defendants breached their duties to RADX. While the plaintiff's

---

[7] The defendants try to distinguish this case from *Hicklin,* arguing that the *Hicklin* court recognized that a confidential relationship does not arise when the parties are dealing at "arm's length and the recipient has not been put on notice of the confidential nature of the disclosure." (Def.'s Rep. Br. 7). However, in this case, the plaintiff has alleged in its complaint that the recipients of the confidential information were on notice that information disclosed was not to be transmitted to third parties. Given that the court must assume the plaintiff's allegations to be true, the court concludes that the plaintiff's complaint is legally sufficient on this point. The defendants also allege that the plaintiffs in *Hicklin* took a number of steps to protect the information at issue in that case, distinguishing *Hicklin* from the instant case. However, *Hicklin* was a decision at the summary judgment stage of the proceedings, and the parties had developed the factual record. As discussed in the body of this order, at the motion to dismiss stage, this court must assume the plaintiff's allegations to be true, and, if after discovery has occurred, the defendants' contentions about the lack of protections provided for the information in question prove to be true, then the court will entertain that argument on a motion for summary judgment.

[8] The defendants concede that a duty may arise when "management of a prospective buyer" induces "management of the prospective seller to part with trade secrets" during business negotiations. (Def.'s Rep. Br. 7). However, the defendants contend that no duty arises when a prospective buyer discloses trade secrets to "low level employees of a competitor." (Def.'s Rep. Br. 8). Whether Shie and Widen were truly low level employees of ACP who had no idea that they had a duty to keep information they learned during negotiations secret is a question of fact that requires discovery. The plaintiff has adequately alleged that Shie and Widen were in positions of responsibility such that they assumed a duty to maintain the secrecy of the information disclosed to them during negotiations. Discovery may disprove that a confidential relationship existed between the parties, which occurred in the cases cited by the defendants such as *GeoChem Tech Corp. v. Verseckes*, 929 S.W.2d 85 (Tex. App. 1996) ("While a confidential relationship might have existed between Verseckes and TI, GSI, or HGS, *the summary judgment evidence* shows that no relationship, confidential or otherwise, existed between any appellee and appellant") and *Motor City Bagels, L.L.C. v. American Bagel Co.*, 50 F. Supp. 2d 460 (D. Md. 1999) (holding at the summary judgment stage that the "plaintiffs failed to adduce sufficient proof" that they acted reasonably in "seeking to ensure the secrecy of" the information in question). However, the defendants are jumping the gun by arguing that the complaint does not allege that a duty to protect the secrecy of the information at issue did not exist in this case.

-10-

complaint could have been more detailed, such as disclosing specific statements made during discussions between RADX and Shie and Widen, all that is required at the pleading stage is that "enough facts" are plead such that a claim for relief is "plausible on its face." *Bissessur,* 581 F.3d at 602. That standard has been met here and, accordingly, the court will not dismiss the misappropriation of trade secrets claim.[9]

## B.    Statutory Abrogation and the Remaining Tort Claims

RADX asserts five causes of action in its amended complaint in addition to the misappropriation of trade secrets claim: (1) tortious interference with a prospective contract; (2) intentional misrepresentation; (3) civil theft; (4) conversion; and (5) conspiracy. The defendants argue that these causes of action should be dismissed because they are "based on the same facts that give rise" to the misappropriation of trade secrets claim and that the WITSA "provides the exclusive remedy for misappropriation of trade secrets." (Pl's Br. 13). The defendants base their argument on Wis. Stat. § 134.90(6), which reads:

---

[9] The defendants argue repeatedly that the plaintiff waived their right to protect their trade secrets by disclosing the information to Shie and Widen. However, if Shie and Widen were under a duty to protect the secrecy of the information at issue in this case, which the plaintiff adequately alleges in its complaint, RADX could not have waived its rights by disclosing information to parties who were obliged to keep that information secret. The defendants also contend that providing a cause of action for disclosure of trade secrets when there was no explicit agreement conflicts with Wisconsin law regarding restrictive covenants, in that Wisconsin courts have often found that confidentiality clauses in written agreements can constitute an unreasonable restraint on trade in violation of Wis. Stat. § 103.465. *See, e.g., Gary Van Zeeland Talent v. Sandas,* 84 Wis 2d 202, 218, 267 N.W. 2d 242, 250 (1978). However, in cases like *Sandas,* the information in question was deemed to not be a trade secret. *Id.* at 216 ("We accordingly conclude . . . that the Van Zeeland customer list did not constitute a trade secret.") Here, the court cannot say, assuming the plaintiff's allegations are true, that the information at issue was not a trade secret. A remedy for improperly disclosed trade secrets always exists under the WITSA. *See Friemuth v. Fiskars Brands, Inc.*, No. 09-cv-0494, 2010 U.S. Dist. LEXIS 9878, at *13 (W.D. Wis. Feb. 3, 2010) ("This does not mean that there is no remedy for improperly disclosed trade secrets under these circumstances: an injured business can bring a claim for violation of Wisconsin's Uniform Trade Secrets Act, Wis. Stat. § 134.90 independently of any breach of contract claim.")

Effect on other laws. (a) Except as provided in par. (b), this section displaces conflicting tort law, restitutionary law and any other law of this state providing a civil remedy for misappropriation of a trade secret.

(b) This section does not affect any of the following:

1. Any contractual remedy, whether or not based upon misappropriation of a trade secret.

2. Any civil remedy not based upon misappropriation of a trade secret.

3. Any criminal remedy, whether or not based upon misappropriation of a trade secret.

The Wisconsin Supreme Court in *Burbank Grease Services* opined on the meaning of Wis. Stat. § 134.90(6), holding that the statute leaves "available all other types of civil actions that do not depend on information that meets the statutory definition of a 'trade secret.'" *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 33 (2006) ("[A]ny civil tort claim not grounded in a trade secret, as defined in the statute, remains available.") Therefore, the plaintiff's claims that are not dependent "solely upon the existence" of a trade secret, *id.,* are not abrogated by the WITSA. At the motion to dismiss stage, the court will not dismiss the other claims based on abrogation, as discovery could prove that the information at issue in the plaintiff's first cause of action falls short of the statutory definition of "trade secret" within the meaning of the WITSA, forcing the plaintiffs to try to recover other civil tort claims not

grounded in trade secret.[10]  *Id.*  In short, a claim of abrogation is premature at the motion to dismiss stage.[11]

## C.    Intentional Misrepresentation Claim

Against defendant Shie, the plaintiff alleges that Shie committed intentional misrepresentation when he "represented to RADX" that:  (1) he was using the information RADX disclosed to Shie "only for the benefit of RADX"; and (2) he was not sharing the information with anyone outside of RADX.  (Am. Compl. ¶ 43).  The defendants first object that the plaintiff has inadequately pled a claim for intentional misrepresentation.  As discussed above, under Fed. R. Civ. P. 9(b), a claim of fraud is subject to a heightened pleading requirement where a plaintiff must state with particularity the circumstances constituting the fraud.   At a minimum, Rule 9(b) requires that the plaintiff state the "identity of the person making the misrepresentation, the time, place, and context of the misrepresentation, and the method by which the misrepresentation was communicated."  *Wade,* 993 F.2d at 1250;  *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (describing Rule 9(b) particularity as "the who, what, when, where, and how: the first paragraph of any newspaper story.")   Here, RADX's reference to Shie making misrepresentations on "numerous occasions" in paragraph forty-three of the

---

[10] The court notes the *Confold Pacific* decision cited by the defendants, *Confold Pac., Inc. v. Polaris Indus.*, 433 F.3d 952, 959 (7th Cir. 2006), precedes the *Burbank Grease Services* decision.

[11] The court notes that the *Burbank Grease Services* decision does not discuss whether a plaintiff who successfully proves that their trade secrets have been misappropriated can sue separately for a tort committed in the course of the misappropriation.  Rather, the case stands for the proposition that civil tort claims not grounded in a trade secret are available to the plaintiff.  Such issues will likely need more attention in the briefings by the parties at the summary judgment stage.

complaint does not suffice to meet the standards for pleading a claim of intentional misrepresentation. (Am. Compl. ¶ 43). Having examined the plaintiff's complaint in detail, RADX's amended complaint only provides the "time, place, and context" of one misrepresentation. The complaint notes that on September 10, 2008, in a meeting in Minnesota, Shie told RADX's representatives, after receiving RADX's operations manual, that he would "maintain its secrecy." *Id.* at ¶ 16. Given that this is the only statement mentioned in the complaint that is sufficiently plead to meet the heightened pleading standard of Rule 9(b), the court will examine if the plaintiff has otherwise adequately alleged a claim of intentional misrepresentation based on the statement Shie allegedly made on September 10, 2008, given Wisconsin law on intentional misrepresentation.

Under Wisconsin law, to allege intentional misrepresentation the plaintiff must show the following five elements: (1) that the defendant made a representation of fact; (2) that the representation was untrue; (3) that the defendant made the representation either knowing it was untrue or recklessly not caring whether it was true; (4) that the defendant made the representation with intent to deceive the plaintiff in order to induce the plaintiff to act on it to plaintiff's pecuniary damage; and (5) that the plaintiff believed that the representation was true and relied on it. *Ross v. Bd. of Regents of the Univ. of Wis. Sys.*, 655 F. Supp. 2d 895, 921 (E.D. Wis. 2009). In this case, the plaintiff alleges that Shie made the statement that he would "maintain the secrecy" of the operations manual with the present intent to not perform his promise, as RADX claims that Shie was actively trying to undermine the

-14-

plaintiff's transaction with ACP when he made the averment in question.  Assuming the plaintiff's allegations to be true, Shie took actions that met the first four elements of an intentional misrepresentation claim, as he made a statement that he knew he would not fulfill with the intent to deceive the plaintiff.  *See Schurmann v. Neau*, 240 Wis. 2d 719, 727, 624 N.W.2d 157, 2001 WI App 4 (Ct. App. 2000) (holding that if the plaintiff alleges that a defendant misrepresented an action that he would take in the future, the plaintiff must show that the defendant "knew of facts inconsistent with his statements or had a present intent not to perform.")  The only issue is whether the plaintiff believed Shie's representation, such that RADX was materially to continue to provide Shie with confidential information, causing the injuries of which the plaintiff complains.  The defendants argue that "RADX had already turned over the . . . confidential information . . . before Shie made any representations," meaning that Shie's statement did not change RADX's actions.  (Def's Br. 17).

The court agrees with the defendants.   Other than the assertion that Shie's false statement cause RADX to "reasonably rely" on the statement in providing Shie continued access to the confidential information (Am. Compl. ¶ 45),[12] the amended complaint does not indicate that:  (1) Shie's statement in anyway caused RADX to justifiably rely on the statement and take any sort of action in response to the statement; and (2) there was any causal connection between the alleged misrepresentation and the injuries that RADX alleges the defendant inflicted.

---

[12] *Brooks,* 578 F.3d at 581 ("[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.")

Without alleging that the statement in question induced RADX to take an action that led to its financial harm, the complaint fails to assert a claim of intentional misrepresentation. *Mackenzie v. Miller Brewing Co.*, 234 Wis. 2d 1, ¶¶ 59-60 (Ct. App. 2000) (holding that to prevail on an intentional misrepresentation claim, a plaintiff must show that there was some sort of causal connection between the statement and the damages alleged); *see also First Credit Corp. v. Myricks*, 41 Wis.2d 146, 150, 163 N.W.2d 1, 3-4 (1968) (holding that a complaint alleging intentional misrepresentation must plead general damages and a causal connection between the alleged acts of misrepresentation and those damages). Indeed, the entirety of the misconduct that the plaintiff alleges in its complaint, such as leaking information to Heatex to help set up Radpro warehouses, occurred during the summer of 2008, well before the statement in question was uttered by Shie. (Am. Compl. ¶ 23). The court is puzzled as to what harm resulted from Shie's statement on September 10, 2008, and, finding the claim to be implausible as currently plead, the court will dismiss the intentional misrepresentation claim without prejudice.[13]

---

[13] Generally, courts grant leave to amend a complaint after granting a motion to dismiss the original complaint under Fed. R. Civ. P. 12(b). *See* Fed. R. Civ. P. 15(a) (providing that leave to amend a complaint should be freely given when justice so requires). However, a district court may deny leave to amend for "undue delay, bad faith, dilatory motive, prejudice, or futility." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 740 (7th Cir. 2007). Futile repleadings include "restating the same facts using different language, reasserting claims previous determined, failing to state a valid theory of liability, and the inability to survive a motion to dismiss." *Garcia v. City of Chicago*, 24 F.3d 966 (7th Cir. 1994). The plaintiff has asked that this court grant leave to amend its complaint to rectify any mistakes, and the defendants have opted to ignore this request in their submissions to the court. The pleadings on the intentional misrepresentation claim have been vague and have lacked an element of the claim. Finding that the plaintiff could merely add detail to its current complaint to rectify the infirmities with the intentional misrepresentation claim, the court will dismiss that claim without prejudice.

**D.     Conspiracy Claim**

RADX, in its amended complaint, asserts a civil conspiracy claim against all the defendants, contending that "each of the defendants were members of, and participated in, a conspiracy . . . with at least one objective being the wrongful utilization and disclosure of RADX's trade secret and other confidential information." *Id.* at ¶ 59.   In Wisconsin, a civil conspiracy is defined as "a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *Radue v. Dill,* 74 Wis. 2d 239, 241 (1976).   Here, the defendants contend that they owed no obligation to the plaintiff and, therefore, have taken no unlawful action.   However, the court cannot dismiss the conspiracy claim given the court's conclusion that RADX has adequately alleged that the defendants did violate the law, namely Wis. Stat. § 134.90.

Ultimately, the court finds that the defendants jumped the gun in bringing this motion to dismiss.   The allegations in the plaintiff's complaint, even in light of the Supreme Court's rulings in *Twombly* and *Iqbal*, are largely satisfactory.

Accordingly,

**IT IS ORDERED** that defendants' joint motion to dismiss (Docket #28) be and the same is hereby **GRANTED** in part and **DENIED** in part;

**IT IS FURTHER ORDERED** that **Count Three** of the amended complaint be and the same is hereby **DISMISSED without prejudice**.

Dated at Milwaukee, Wisconsin, this 22nd day of April, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge